Good morning, Your Honors. May it please the Court, Amy McGeever, certified law student from the University of San Diego, on behalf of Petitioner, Mr. Mohammad Nazmul Hasan. I am joined today by Professors Michael Devitt and David Schlesinger. At this time, Petitioner would like to reserve two minutes for rebuttal. Try to keep your own time, if not, I'll try. Maybe one of us can do it, but it rarely works. Thank you. Your Honors, this case hinges on one interview, contradictory testimony, and the failure of the government to produce writings that would dispositively settle a main issue in this case. Instead of producing these documents, which all accounts agree include contemporaneous notes taken during this interview, the government instead offered unrefreshed and contradictory testimony as to the events of the interview. And it is this very testimony that the immigration judge erroneously credited in making an adverse credibility determination against Mr. Hasan. Based on the unexplained absence of these notes from the record and from Mr. Hasan's A-files, Petitioner has set forth the claims before this Court. These claims include the adverse credibility determination, which was wrongfully decided, as well as a due process claim for the failure to provide Petitioner with a complete A-file. Did counsel have the ability to obtain the FBI file that might have contained the agent's notes? It is unclear from the record. However, what we do know, as the BIA noted in its opinion, is that where an adverse credibility determination is made, this Court has previous jurisprudence, including the Singh case. In Singh, this Court found that government testimony is often offered to supplement the notes produced. However, generally it is not offered by itself. This was also addressed in Lee v. Ashcroft, which the Court noted in Singh. Now, this government testimony that is provided is often recapturing what happens during an interview, and is usually accompanied by notes, including the A-file. This case is different from Singh, though, isn't it? Because the agents actually testified at the hearing. Yes. And putting aside the other issues with respect to the adverse credibility determinations, aren't there cases where the I.J. or an I.J. could determine an interviewer was credible and the alien was not? Yes. Putting aside the instance in this case, there are instances where the immigration judge has the ability to apply the REAL-ID Act and determine credibility, both of a government witness or a different witness brought against an applicant. However, here, in doing this credibility determination, the immigration judge improperly credited the government witness's uncorroborated testimony over Mr. Hassan's. Why does the testimony need to be corroborated in writing? I mean, when we're doing criminal cases where it's proof beyond a reasonable doubt and people's liberty is at stake, we go on the credibility of government agents, most of whom don't save their notes from interviewing a defendant and tell us what the defendant said, and that's what cross-examination is about, and then the trier of fact makes a credibility determination. Why should that be different here? Here, we're dealing with an immigration context, and the immigration judge is still required to provide Fifth Amendment protections and due process protections to an applicant. Here, the government cites Anderson v. City of Bessemer for the proposition that a judge can credit the testimony of one witness over another. However, that case is a civil case where civil protections are in place, including the Federal Rules of Civil Procedure as well as the Federal Rules of Evidence, that allow for, whether it be a criminal defendant or a civil defendant, to have the evidence that's going to be produced against them provided in advance. Here, that evidence was never provided. Only testimony over the occurrence of the events, and the testimony that was provided is internally inconsistent. Officers Bentley and Compton both testified that some notes were taken. What those notes are was not included. Officers Bentley's testimony in the appellate record around 434 also includes a mention that they're required to provide a record of this interview. That record would normally be included in the A file. However, it's absent from this A file. If you look at government, excuse me, the government's exhibit number five, which is included in the record, it begins at excerpts of record page 147, I believe. You have attachments A through E, which include all of the events of the asylum application process. Only missing is this one interview. Directly after where this interview should be is a second interview that occurred on July 21st with a new agent, and it includes no indicia of any issue regarding any terrorism bar finding. That agent was not called to testify. Only the agents whose interview notes were not appended to the A file. But I understand that, but it can't be that your client has a greater due process and Fifth Amendment right than a criminal defendant does. And, you know, you say a criminal defendant gets discovery and has Brady protections and the like. But what I'm telling you is many times the officers are just testifying by memory, often inconsistently with each other, and it's up to the trier of fact to determine credibility from all the different circumstances. You're saying here there's no way the immigration judge can make that credibility determination without the production of the notes. In this case, the immigration judge is able to still make a credibility determination in accordance with the Real ID Act. That includes, you know, taking into account the actual demeanor of the people testifying and whatnot. However, they must point to evidence with an actual indicia of reliability. And this court in its case law has found that an indicia of reliability when it comes to conflicting testimony requires some additional evidence be provided. Here, the testimony was almost a year after the initial interview. As both Officers Bentley and Compton testified, they were unrefreshed, had not had an opportunity to look over their notes, and did not remember the actual events of the interview. This was all credited to the harm of Mr. Hassan, who consistently testified that he had no affiliation with the Hujiby, was not sure what the Hujiby was, and did not ever state that he was a member of that organization. But your position is that the two agents went in and concocted a story about this terrorist organization. They didn't get their story straight, but they are the ones who created this terrorist link, and your client was totally an innocent victim of a government conspiracy to perjure themselves. We don't know how the events went down on that day, and that's exactly what's missing here, is at the end of the interview they're required to make a record of the interview. That record was not made and not included. We don't know conclusively what happened. Whether the name of the organization was proffered by a government agent or by Mr. Hassan, we have no way of knowing. What we do know in the record before us is that there's an incomplete record as to the full A file, which in accordance with this court's holding indent would amount to a due process violation on behalf of our client. But the government agent said they never even heard of this organization until your client mentioned it. Isn't that indicia of the fact that it didn't originate with them? There's also conflicting testimony as to whether they had printed out beforehand and read over the different government organizations as to whether they were aware of it and at what point they became aware of it. Also, we know from this interview that there were translation difficulties with the Bengali translator and the actual occurrences as to how things went down is very fuzzy for this actual interview. A couple of questions. Have you made a motion to reopen or anything similar based on the current activity in Bangladesh or situation in Bangladesh? No. At this time, we are still looking to vacate this order and remand it for proceedings consistent. It would be our ultimate goal to have the adverse credibility determination reversed and have it remanded. In that time, additional country evidence could be supported based on the current conditions. Mr. Hassan's testimony at the merits hearing, was it consistent with his testimony at the bond hearing? Or does that matter? We don't know exactly from the record. In the record, we see that the government tried to bring in testimony from the bond hearing and that based on the CFR regulations, that was excluded. Also pertinent to this Court's jurisprudence, bond hearing information is not admissible in a merits hearing phase. It is deemed to be separate and to be consistently kept separate. However, whether that internal consistency is there is at issue. Thank you, Cassie. Ms. McIver, your professor should be very proud of you. You did a great job on the brief. You did a great job here in oral argument, and it's not over yet. Thank you. We'll give you your two minutes to rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Nicole Murley, and I'm here today on behalf of the Attorney General. The Court should deny the petition for review because the record evidence does not compel reversal of the agency's decision. And even if the Court were to reverse or not credit the IJ's adverse credibility, the agency's adverse credibility determination, the Court may resolve this case on the agency's finding of the merits of petitioner's claim for asylum, withholding of removal, and protection under the Convention Against Torture. The evidence the petitioner presented did not meet his burden of proving eligibility for relief, and the record evidence does not compel a contrary conclusion. When you say that, you're saying, assuming the petitioner's testimony is all true, the IJ still wouldn't make that a case. Correct. And the immigration – both the immigration judge and the board made the finding on the merits of petitioner's asylum and withholding. How can we affirm on the merits without addressing the adverse credibility? Is that what you're suggesting? Even if petitioner's testimony is taken as true, and even if you look at all the evidence in the record. What language in the BIA's opinion do you think deny relief even if Mr. Hassan was credible? I'm curious about that. In the board's decision? Yes. It's the second paragraph on AR4, the second paragraph in the bottom, where it says, moreover, the harm the respondent suffered did not rise to the level of persecution. As a result of the Awami League party members' attacks, the respondent suffered abrasions over his arms, forearms, and legs, but no serious injuries. And they cite this court's precedent, detention and beating did not constitute persecution. In addition, the respondent did not demonstrate a well-founded fear of persecution and that he failed to establish that his fear of future persecution is objectively reasonable. Reports show progress that Bangladesh is making in its law enforcement and its political opposition to street conflicts. The respondent is, therefore, ineligible for asylum. So basically they're saying this is a political dispute, a schoolyard fight, and it doesn't rise to the level of what proof needs to, even if we take everything that Mr. Hassan said as true. Yes. He testified to the three separate attacks. The board is saying even if that is true, that does not rise to the level of persecution. And the country conditions, as evidenced by the State Department reports and other evidence, demonstrate that it is not with a government acquiescence and that the Bangladesh government is taking steps to address the student street fighting. And how much deference do we give to that finding from the immigration judge and from the board? There is substantial evidence. If the record does not compel a country to prove that he was not here, then the agency's decision must stand. There is evidence in the record that the BNP and the Hujib were political enemies. Correct. There is. Doesn't that directly undercut the government's theory? And did the immigration judge address this fact? The immigration judge, I do not believe he addressed that fact. But I'll turn to the credibility finding. First, to the extent that they are raising the issue that the immigration judge should have required corroboration. If this were the immigrant testifying and they found inconsistencies, the kind of inconsistencies that the record would reflect, or the immigrants complaining about in the government's testimony, they'd probably find the government witnesses not credible, wouldn't they? When you have those kinds of inconsistencies. Here, the immigration judge, after hearing testimony from the officers and hearing petitioner's testimony, made a specific finding that he found the agent's testimony to be believable, credible, and consistent. I don't know if he found that. I said if this kind of testimony were offered by the immigrant, they would undoubtedly point to all these inconsistencies, or one or two, and they'd say, well, he's not credible, because there are inconsistencies. In the testimony, the inconsistencies here were minor. Both agents... Not compared to the kind of inconsistencies the government usually relies on. Here, the burden is on the petitioner to demonstrate that, provide the evidence that he is eligible for the relief that he seeks. And it is the immigration judge to weigh the evidence that's presented. And here, the immigration judge found, it not only found, he based his credibility determination on the petitioner's denial of making those statements to the officers, but he also based it on petitioner's demeanor. And this case is covered by the real ID amendments. And the immigration judge found... Well, we might as well not hear anything once they've based it on demeanor, right? If that's what it takes. The demeanor is a factor under the real ID that the immigration judge made... Yeah, it's a factor. ...considering here he gave specific examples that when asked questions about the when petitioner was asked questions about if he made those statements to the officers, rather than answer directly, he responded with a question. The immigration judge also said when he failed to offer an explanation why he would say this terrorist organization, instead he just said he never said that and asked why would I say that. The immigration judge also found... Is there something wrong with saying why would I say that? They asked him, did you say it? And he said, why would I say that? The immigration judge found, witnessing his testimony, that it appeared to be evasive. Ms. Burleigh, I think what we're feeling up here is it doesn't make sense for Mr. Hassan to be a member of this political party. Yes, they have an opposition party that they struggle with, but the terrorist organization would hate these guys and these guys would hate the terrorist organization. And isn't it more likely with this language problem that either he misunderstood and said this organization or he thought he was being asked about the organization, but he wasn't saying I'm a member of the organization or I'm a clerk for the organization. And as the agents themselves said, nobody volunteers this information in their experience. And what we're feeling up here is there might have been, because of the language problem and the fact there was not an interpreter present, there might have been a miscommunication, a misunderstanding, and we're not real comfortable with that being the peg that we hang our hat on, as opposed to what you started with, which is to say even if you assume, throw that out and say even if you assume that he had this struggle, it doesn't rise to the level under torture or under asylum. Well, two things. Petitioner was represented by counsel during his interview. We've heard enough about how that works. He was asked to explain what happened during that interview with the officers, and his explanation was simply why would I say that, not I misstated. Can you find that? When somebody is asked a question like, did you kill your wife, and he said, why would I kill my wife, that shows that he must have killed his wife, right? No, Your Honor. But there's something peculiar about that response? The immigration judge who witnessed the testimony found it strange. Yeah, I know about the immigration judge. I know about this immigration judge. In any event, if this case does not stand on the immigration judge's adverse credibility determination, even if that portion, we don't need to reach that portion of that decision to, the record evidence does not compel that the conclusion that the attacks petitioner testified to rose to the level of persecution. Well, let me ask you a question before your time is up. I asked you if there was evidence in the record that the BNP and the WHO GB were political enemies or if the IJ addressed this, and you said he didn't address that. And so my follow-up question is, if the IJ did not address a fact that goes to the core of this dispute, didn't he fail to consider the totality of the circumstances? The immigration judge considered petitioner's testimony. Just answer my, if you could, just answer my question. The totality of? Well, I mean, the judge is supposed to look at the totality of the circumstances, and what goes to the core of this dispute is this whole political situation that the BNP and the WHO GB, I think, I mean, it seems like that's a significant part of this, were political enemies, and the IJ doesn't even address that. So how could, you know, in addressing the totality of the circumstances seem like that would be significant? Am I wrong? I mean, no. But the immigration judge based his credibility determination on petitioner's answers and that he couldn't credit his testimony because of his demeanor. He also pointed out three or four other reasons that he could not credit his testimony. He then said, even if I set the testimony aside and I look separately at all of the record evidence, which included letters from petitioner's brother that he was not a member of the WHO GB, medical evidence, letters from Secretary of the BNP, the immigration judge found, even considering that evidence, it didn't rise to the level of persecution. He wasn't eligible for asylum withholding or convention against torture. And the record evidence does not compel a contrary conclusion to the finding on the merits of the asylum withholding and that claim. Thank you, counsel. Thank you. Thank you. Would you address counsel's argument that even assuming your client was credible, what happened to him does not rise to the level required for finding a bad persecution? Gladly, Your Honor. Opposing counsel, the government, cites to one paragraph in the BIA opinion, which does not actually credit Mr. Hassan's testimony as being credible. Mr. Hassan testified that he suffered three separate attacks, one of which included the hospitalization of Mr. Hassan. That hospitalization record is provided. The actual occurrence, while it does include what the immigration judge termed as abrasions, generally people are not hospitalized for minor incidents. Here we have three separate attacks, including a hospitalization. We also know that there were threats against Mr. Hassan and his family, threats to the extent that Mr. Hassan lived indoors and did not leave his house for about a year. So if we deem Hassan credible and believe these statements, statements that he felt forced to flee his home country, he left and fled to India, took a perilous voyage to Mexico, finally making it across the border into the United States, if we credit these statements, these are not fully taken into account by the BIA's small paragraph where it mentions only that Hassan suffered abrasions over his arms. Finding a credibility determination was not actually looked at here in terms of crediting Hassan's full testimony as to his actual persecution. It is Mr. Hassan's position that these events amount to past persecution, providing a rebuttable presumption on the government at the least, and that he can definitely show a well-founded fear of future persecution in this case. Additionally, as far as the adverse credibility is mentioned, the government proffers that the burden is on Mr. Hassan to prove his asylum claims, which is true. However, for credibility determinations, the REAL ID Act equally applies to both applicants and witnesses. The language of the Act states that considering the totality of the circumstances, as Judge McGeeh pointed out, that all relevant factors, a trier of fact, must base a credibility determination on the internal consistency of each statement and the consistency of such statements with other evidence in the record. That was not equally applied here. We see that the inconsistencies in the government's statements were credited, whereas Hassan's consistent statement was discredited. Thank you, Kathy. The case just argued will be submitted. Thank you all very much.
judges: Lasnik, Reinhardt, Murguia